**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| AZARIAH FULLER on Behalf of Herself and All Others Similarly Situated, MICHELE FLEETWOOD, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:25-cv-02522-TWP-MJD |
| CMG TRUCKING, INC., SUMMER MCINTRYE, | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFFS' MOTION FOR NOTICE OF COLLECTIVE ACTION**

This matter is before the Court on Plaintiffs Azariah Fuller ("Fuller") and Michele Fleetwood's ("Fleetwood") (together, "Plaintiffs") Motion for Approval of Notice to Collective Action Members, Class Definition and Contact Information for Potential Class Members (Filing No. 37). Plaintiffs initiated this action against Defendants CMG Trucking, Inc. ("CMG") and Summer McIntyre ("McIntyre") (together, "Defendants") on behalf of themselves and all others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA") and Indiana's Wage Claims Statute and Wage Payment Statute (Filing No. 24).[1] For the reasons stated below, the Plaintiffs' Motion is **granted in part and denied in part**.

## I. BACKGROUND

CMG is a regional trucking and dump truck company based in Indianapolis. McIntrye is the owner of CMG and in that capacity, she decides the compensation of Plaintiffs and the proposed Class and Collective Action members. (Filing No. 24 at 2). Fleetwood began her employment as a truck driver with CMG in May 2018, and Fuller began her employment as a truck driver with

[1] Plaintiffs moved to file a Second Amended Complaint (Filing No. 66), which the Court granted (Filing No. 72).

CMG on July 9, 2021. *Id*. at 1, 4–5. As truck drivers, Plaintiffs consistently worked over forty hours per week and were paid as hourly employees. *Id*. at 4–5. Plaintiffs' work duties included pre-trip Department of Transportation ("DOT") inspections, post-trip DOT inspections, fueling, driving both to and from the yard to the worksite, as well as various other work-related activities. *Id*.

Plaintiffs allege that during their employment, CMG did not, and has not, paid them for all their regular work hours and overtime hours. *Id*. Plaintiffs have not received payments for the time worked completing their work duties, including pre-trip Department of Transportation ("DOT") inspections, post-trip DOT inspections, fueling, driving both to and from the yard to the worksite, as well as various other work-related activities. CMG's Employee Handbook requires all of its truck drivers to "[c]heck equipment out before leaving terminal and upon return to terminal," to inspect equipment in compliance with "DOT – ICC Regulations, State – City- County – Federal Laws" (Filing No. 53-2). CMG requires that truck beds and the inside of the are clean, and requires its drivers to "[f]uel up at designated station after every shift." *Id*. The violation of any of these written rules could result in discipline. Fuller, Fleetwood and the other truck drivers working for CMG were instructed to write down their start time when they got to the customer location and their end time when they left the customer location. (Filing No. 47-1, ¶19).

Plaintiffs list examples of several pay periods when CMG did not pay them for time worked and overtime hours which include, April 22 to 28, 2024; July 22 to 28, 2024; June 23 to 29, 2025; and July 21to 27, 2025. *Id.* Plaintiffs also allege that Defendants violated the "Wage Claims Statute" and the "Wage Payment Statute" by "fail[ing] to pay [them] all that [they were] due and owing." *Id*., ¶¶ 63, 81, 87. In particular, CMG failed to pay for the same work activities at issue under their FLSA overtime claim. *Id.*

Fleetwood is a current employee of CMG and Fuller was an employee until she was terminated on August 5, 2025. *Id.* at 4. Fuller initiated her wage complaint with the Department of Labor and the Attorney General's office. *Id.* On October 14, 2025, the Attorney General in conjunction with the Department of Labor referred Fuller's wage claim to her current private attorney. *Id.*

## II. LEGAL STANDARD

Under the FLSA, an employee is permitted to maintain a collective action for "unpaid overtime compensation . . . for and in behalf of himself...and other employees similarly situated." 29 U.S.C. § 216(b). "Such a collective action differs significantly from a Rule 23 class action. Potential class members in a collective action must affirmatively opt-in to be bound, while in a Rule 23 action they must *opt out* [to] not be bound." *Cheesman v. Nexstar Broad. Group, Inc.*, No. 07CV360, 2008 WL 2225617 at *1, 2008 U.S. Dist. LEXIS 42265 at *2 (S.D. Ind. May 27, 2008) (emphasis in original). The standards governing class certification under Rule 23 are not applicable to FLSA collective actions. *Id.* Courts in the Seventh Circuit engage in a two-step inquiry to determine whether an FLSA action may proceed as a collective action. *Id.* The first step is called the "notice stage" and "involves an analysis of the pleadings and affidavits which have been submitted to determine whether notice should be given to potential class members." *Id.* (quoting *Carter v. Indianapolis Power & Light Co.*, No. IP102CV01812SEBVSS, 2003 WL 23142183 at *1, 2003 U.S. Dist. LEXIS 23398 at *3 (S.D. Ind. Dec. 23, 2003)). "The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*

"[T]o secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated. By this, [the Seventh Circuit] mean[s] that a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Richards v. Eli Lilly & Company*, 149 F.4th 901, 913 (7th Cir. 2025). "A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence." *Id*. "[A]t this stage, the relevant evidence will likely come in the form of affidavits and counter-affidavits, including those that a plaintiff may wish to submit after seeing a defendant's rebuttal evidence." *Id*.

However, "a plaintiff is not automatically entitled to notice upon establishing the existence of a material dispute as to similarity." *Id*. Rather, "the decision to issue notice will depend on [the court's] assessment of the factual dispute before it." *Id*. It is left to the "sound discretion of the district court to facilitate notice in an efficient way that strikes an appropriate balance between timely notice and judicial neutrality." *Id*.

"If the district court is persuaded that the evidence necessary to resolve a similarity dispute is likely in the hands of yet-to-be-noticed plaintiffs, it may proceed with a two-step approach—that is, it may issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for certification after opt-in and discovery are complete." *Id*. "Alternatively, if the court is confident that a similarity dispute can be resolved by a preponderance of the evidence before notice, it may authorize limited and expedited discovery to make this determination and tailor (or deny) notice accordingly." *Id*.

If the court grants conditional certification of a collective action, it has discretion "to prescribe the form, manner, and timing of notice to ensure that putative members receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Weninger v. Gen. Mills Operations LLC*, 344 F. Supp. 3d 1005, 1012 (E.D. Wis. 2018) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

## III. DISCUSSION

Plaintiffs seek an Order approving service of notice to all other similarly situated truck drivers and ask the Court to approve the following Class Definition for the collective action:

> All present and former truck drivers of CMG Trucking, Inc., who worked over forty hours in one or more workweeks and was paid on or after December 13, 2022, and were not paid all overtime hours worked.

(Filing No. 38 at 3). Plaintiffs also seek contact information for all potential members of the collective action. *Id*.

Plaintiffs contend that they have presented sufficient evidence establishing that CMG has common pay policies or practices that violate the FLSA. Fuller and Fleetwood testified that they and their fellow truck drivers were not paid for the following: (1) time to perform pre-trip DOT inspections; (2) time to fuel the dump truck; (3) all or some of the drive time from the yard to the worksite and the worksite back to the yard; (4) drive time from one worksite to another worksite in the same workday; (5) time spent completing and turning in paperwork; and (6) time spent cleaning the dump truck. *Id*. at 5–6 (citing Filing No. 37-1 at 3–4; Filing No. 37-2 at 3–4). Based upon their conversations with co-workers, Plaintiffs assert that they and their fellow truck drivers were not paid overtime wages earned as a result of time spent performing pre-trip inspections,

fueling, cleaning the truck, driving to and from the yard to the worksite, driving from one worksite to another worksite in the same workday, and completing and turning in paperwork. *Id*. at 6.

Plaintiffs argue that their testimonies provide sufficient evidence of common unlawful pay policies or practices and that they have "raised at least a material factual dispute as to the similarity of potential plaintiffs" as required by *Richards*. *Id*. (quoting *Richards*, 149 F.4th at 913). And if the Court finds that notice should be given to potential collective action members, it should instruct CMG to produce via e-mail an Excel document providing the names, last known addresses, cell phone numbers, dates of employment, e-mail addresses, and dates of birth of all potential collective action members. *Id*. at 6 (citation omitted).

Defendants contend the Court should deny Plaintiffs' Motion for four reasons: (1) the FLSA does not require separate payment for discrete work activity; (2) Plaintiffs have presented no evidence showing how the alleged failure to pay them separate amounts for discrete work activities ever resulted in the underpayment of overtime to them or anyone else; (3) Plaintiffs offer no viable method for determining which drivers were allegedly underpaid for work in particular workweeks and whether that impacted overtime pay; and (4) Plaintiffs have not identified anyone who wants to join this case (Filing No. 47). The Defendants then take issue with the Class Definition arguing that it is not specific enough and is instead, a solicitation of claims which is prohibited by *Richards*.

Defendants' first argument goes more to the merits of the case than to whether the potential collective action members are similarly situated. The Court previously rejected Defendants' first argument—that the FLSA does not require separate payment for discrete work activity—and thus rejects the argument here for the reasons (*see* Filing No. 62).The Court will address the remaining arguments in turn.

**A. Affidavit Evidence**

Defendants argue that Plaintiffs only evidence in support of their Motion is their fact-free, conclusory statements about not having been paid for work activities, hearsay statements about what other drivers purportedly told them, and arguments from their counsel. Defendants contend that none of this qualifies as colorable evidence that CMG ever failed to pay Plaintiffs or any other drive the overtime to which they were entitled under the FLSA (Filing No. 47 at 9).

Defendants point to numerous cases where the district court determined it could not invite individuals to join a proposed collective action based on a plaintiff's generalized and conclusory allegations of FLSA violations. *Id*. at 10 (citing *Hayes v. Thor Motor Coach, Inc.*, 502 F. Supp. 3d 1342, 1345 (N.D. Ind. 2020) (noting that a plaintiff does not meet its burden by merely repeating the complaint's allegations but must come forward with actual evidence); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (noting that vague and generalized allegations of unpaid work are "not the type of 'factual' showing that would establish a colorable common policy or plan . . . that violated the FLSA.")) (other citations omitted).

Defendants assert that Plaintiffs' virtually identical conclusory and fact-free declarations do not increase the evidentiary value of their submissions. On the contrary, it only further demonstrates their invalidity to supply proof of a common illegal policy or practice. *Id*. at 11. And even if Plaintiffs have somehow shown that CMG failed to pay them for the work activities they identified resulting in overtime violations, Defendants argue it does not demonstrate the existence of a companywide policy to justify the issuance of Court-sanctioned invitations to join this case. *Id*. (citing *Flores*, 289 F. Supp. 2d at 1046 (noting that "a demonstration of Lifeway's payment practice concerning two . . . employees . . . does not rise to the level of a common policy or plan . . . that violated the FLSA."). Defendants argue that Plaintiffs' declarations merely repeat identical

statements that other drivers were not paid for various work activities. But these statements are pure hearsay and are unsupported by any facts demonstrating personal knowledge of the content of the statements. Defendants contend that such unsupported hearsay is not the kind of evidence that *Richards* requires.

Plaintiffs reply that at this early stage, affidavits are the only evidence available to Plaintiffs to support their Motion (Filing No. 53 at 9). Plaintiffs cite the Order Granting Motion for Notice of Collective Action in *Allen v. Statewide Transfer Ambulance & Rescue, Inc.*, No. 1:24-cv-858-MPB-MKK, Docket No. 78 (S.D. Ind. Dec. 19, 2025). In *Allen*, the Court relied upon the affidavits of a named plaintiff and a co-worker to approve notice to potential collective action members, finding that the "affidavits provide 'some evidence' of a common unlawful practice on [d]efendant's part,." (Filing No. 31 at 3 (citing *Allen*, No. 1:24-cv-858, Order Granting Mot. Notice Collective Action, Docket No. 78 at 3 (citing *Richards*, 149 F.4th at 906, 913); *Gower v. Roudy's Supermarkets, Inc.*, No. 24 C 9346, 2025 WL 3537391, at *4 (N.D. Ill. Dec. 10, 2025) (holding that two affidavits, one of which was the plaintiff's, satisfied plaintiff's burden to secure opt-in notice))). Plaintiffs also cite *Kruger v. Arrow Container, LLC*, No. 1:19-cv-1402, 2019 WL 6468334, at *2 (S.D. Ind. Dec. 2, 2019), where the Court, relying on *Allen v. Payday Loan Store of Indiana, Inc.*, No. 2:13-cv-262, 2013 WL 6237852, at *7 (N.D. Ind. Dec. 2, 2013), found that a plaintiff need not present affidavits from every employee to receive conditional certification of the collective action and one of the named plaintiffs' affidavit stating that based on his conversations with co-workers, he was not aware of any hourly employee who was paid more than time and a half his hourly rate in overtime pay, was enough to satisfy the minimal burden to warrant court-authorized notice. *Kruger*, 2019 WL 6468334, at *2. Plaintiffs assert that despite the contentions Defendants raise regarding the affidavit evidence submitted, the affidavits provided are exactly the

kind of evidence relied upon in the above-cited cases to approve notice to potential collective action members.

Here, the Plaintiffs' affidavits are not the only evidence relied upon. Plaintiffs also cite to specific sections in CMG's Employee Handbook requiring drivers to perform tasks such as checking equipment before leaving the truck terminal and upon returning to the terminal, inspecting equipment in compliance with federal and state regulations, cleaning the inside of the trucks, and refueling at a designated station after every shift, all duties which if a truck driver fails to do could result in discipline (*see* Filing No. 53 at 3–4 (citing Filing No. 53-3 at 9–13)). Even if Plaintiffs' affidavits—stating only that "based upon [their] conversations with co-workers," CMG failed to pay Plaintiffs and any other truck driver for all of their time spent performing certain tasks (Filing No. 37-1; Filing No. 37-2)—were not on their own sufficient under *Richards*, the Court need not make that determination. Here, the totality of the evidence is enough to satisfy the "some evidence" threshold requirement articulated in *Richards*. *See Gower*, 2025 WL 3537391, at *4 (holding that a plaintiff who cited to her own affidavit, an affidavit of another former employee of defendant, job descriptions of other employees, internal company policies and procedures, and testimony about the defendants' management structure from similar cases was enough to secure notice).

**B. <u>Method for Determining Collective Claims</u>**

Defendants contend that the Court should deny notice because Plaintiffs have failed to explain how the Court could resolve the claims of the collective on an aggregate basis (Filing No. 47 at 12). Even if it were theoretically possible that CMG had failed to pay other drivers for all overtime hours they were due, identifying those drivers and evaluating the sufficiency of their compensation would require separate analysis of each driver's individual pay and work records.

The need for such individualized inquiries is why FLSA claims on a collective basis is only ever appropriate when members of the collective have each been subject to the same allegedly illegal pay policy. *Id*. at 13 (citing *Richards*, 149 F.4th at 913). Defendants assert that when, as here, there is no such policy, collective adjudication is simply impossible. *Id*. (citing *Blakely v. Celadon Trucking Servs., Inc.*, No. 1:16-cv-351, 2017 WL 6989080, at *4 (S.D. Ind. Oct. 18, 2017) (denying notice because the named plaintiffs' anecdotal evidence to describe their own alleged underpayments would require the court to "analyze each [c]ontracting [d]river's payments for every week in which he or she worked during the collective action period and divide the total compensation each driver received by the total number of compensable hours that driver worked [] in order [to] determine whether he or she received an effective hourly rate of less than the federal minimum hourly rate of $7.25 per hour.")).

Here, as the Court found in its prior Order, the Plaintiffs have sufficiently alleged FLSA claims and *Richards* does not require that Plaintiffs provide a method for determining the collective claims at this stage. Again, the threshold inquiry for notice is merely that Plaintiffs must establish a material factual dispute as to whether the Plaintiffs and the potential collective members are similarly situated. *Richards*, 149 F.4th at 913. The Court may issue notice while ultimately postponing the final decision of whether the collective is similarly situated until Plaintiffs move for certification after opt-in and discovery are complete. In addition, the claims in *Blakely* involved a "per-load/per-mile pay structure" and whether truck drivers were paid less than the federal minimum hourly rate of $7.25 per hour. 2017 WL 6989080, at *4.

Such claims are not at issue in this case. Accordingly, the Court finds that a precise method for determining the collective claims may be determined after notice and when the Plaintiffs move for certification.

**C. Identification of Others Who Wish to Join the Collective**

The Defendants contend that numerous federal courts have refused to authorize the distribution of notice of an FLSA collective action in the absence of some evidence that other purportedly similarly situated individuals desire to join the case (Filing No. 47 at 13 (citing cases)). However, the cases cited by the Defendants were all determined before *Richards*. As the Plaintiffs point out, if the Seventh Circuit required evidence that other purportedly similarly situated individuals desired to join the case, it would have stated so in *Richards*. It did not; instead articulating that to secure notice, a plaintiff need only produce "some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Richards*, 149 F.4th at 913. Accordingly, the Court will not impugn upon Plaintiffs an additional requirement not imposed by the Seventh Circuit.

**D. Class Definition**

Plaintiffs ask the Court to authorize them to send notice to the following individuals:

> All present and former truck drivers of CMG Trucking, Inc., who worked over forty hours in one or more workweeks and was paid on or after December 13, 2022, and were not paid all overtime hours worked.

(Filing No. 38 at 3). Plaintiffs submit their proposed Notice of Collective Action Lawsuit and Opt-In Form (the "Notice") (Filing No. 37-3). Plaintiffs also seek contact information for all potential members of the collective action. *Id*.

Defendants argue that this definition fails to identify a valid legal theory underpinning Plaintiffs' FLSA overtime claims, explain how they and members of their proposed collective were victims of the same common unlawful employment practice or policy, or demonstrate that the claims of the proposed collective could be resolved collectively and not individually (Filing No. 47 at 14). Defendants contend that therefore Plaintiffs propose a failsafe class which is improper

under Rule 23. Defendants acknowledge that this is not a Rule 23 class action but argue that defining the proposed collective in the same conclusory terms only underscores the deficiency of their arguments and the impropriety of inviting others to join this case when there is no evidentiary basis of a common unlawful employment practice or policy. *Id.* at 14–15. Defendants then conclude that Plaintiffs ask the Court to invite a broad group of employees to join their case to see if they might have claims bas on theories not yet explained, which is precisely the kind of claim solicitation that *Richards* prohibits. *Id.* at 15.

Plaintiffs respond that this same Class Definition has been approved in the last several collective actions approved for notice handled by proposed Collective Action Counsel (Filing No. 53 at 9 (citing *Bowie et al v. Gifted Touch, LLC et al*, No. 1:25-cv-441, January 12, 2026, Order, Docket No. 72; *Allen v. Statewide Transfer Ambulance & Rescue, Inc.,* No. 1:24-cv-858, December 19, 2025, Order, Docket No. 78; *Sparks v. TLC House and Residential Services, LLC et al*, No. 1:25-cv-2034, April 14, 2026, Order, Docket No. 69)). The Court agrees and finds that Defendants' arguments concern the Notice rather than the Class Definition. For example, a Class Definition is not required to include a demonstration as to how the claims could be solved together or explain the specific alleged unlawful practice. Rather, the Class Definition merely contours the scope of who will receive the Notice. Accordingly, the Court finds that the Class Definition accurately encompasses the potential collective. The Class Definition is therefore **approved**.

**E. <u>Unopposed Relief</u>**

Plaintiffs contend that Defendants raised no specific objection to the proposed Notice, the methods of distributing the Notice or the contact information requested. Accordingly, they ask the Court to approve their requests because they are unopposed (Filing No. 53 at 10). The Court agrees as to the methods of distribution and contact information and thus, those requests are **granted**.

However, as mentioned above, Defendants' objections to the Class Definition, while styled as such, appear to instead be objections to the form and content of the Notice. For example, the Defendants contend that the Class Definition does not demonstrate that the claims of the proposed collective could be resolved collectively rather than individually (Filing No. 47 at 14). But this is not something that one would expect to be in a Class Definition. Rather, this explanation is more likely to appear later in the proposed Notice. It appears that Defendants are attacking the form and content of the Notice, rather than the Class Definition. Plaintiffs do not engage with Defendants' concerns; they simply state that the Class Definition has been recently approved by this Court.

Neither party adequately engaged with the form and content of the Notice and the Court noticed typos in the Notice. For example, the Class Definition omits an "s" where it states "were not paid all overtime hour worked." (*See* Filing No. 37-3 at 2). The Notice also references "MGR Trucking, Inc." which appears to be a different defendant in a different FLSA trucking lawsuit *See id*. at 4. Accordingly, the Court **orders** the parties to confer and submit a Joint Agreed Notice, Opt-In Form and Email and Text Notice within **14 days** of this Order. If the parties cannot agree, the Plaintiffs must submit their proposed notice within **14** days of this Order. Defendants will then have **7 days** to respond and submit their proposed notice, and the Court will make its ruling.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** the Plaintiffs' Motion for Approval of Notice to Collective Action Members, Class Definition and Contact Information for Potential Class Members (Filing No. 37). The Motion is **granted** insofar as the Court approves Plaintiffs' methods of distribution for the notice, and the Court **ORDERS** the Defendants to

provide the names, addresses, cell phone numbers, e-mail addresses, and dates of employment of all former or current employees who were employed during the relevant timeframe.[2]

The Motion is also **granted** insofar as the Court authorizes the Plaintiffs to provide notice to the following potential plaintiffs:

> All present and former truck drivers of CMG Trucking, Inc., who worked over forty hours in one or more workweeks and was paid on or after December 13, 2022, and were not paid all overtime hours worked.

However, the content and form of the proposed notice remains a matter to be settled. Accordingly, the parties are **ORDERED** to confer and submit a Joint Agreed Notice, Opt-in Form, and Email and Text Notice within **14 days** of this Order. If the parties cannot agree, the Plaintiffs must submit their proposed notice within **14** days of this Order. Defendants will then have **7 days** to respond and submit their proposed notice.

**SO ORDERED.**

Date: November 12, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jeffrey T. Reinking
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
jreinking@scopelitis.com

Russell Jay Taylor, Jr
Scopelitis Garvin Light Hanson & Feary, P.C.
jtaylor@scopelitis.com

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com

[2] Plaintiffs provide no reason as to why they need dates of birth for the potential plaintiffs, and the Court finds that such information is not required to provide notice. If the Plaintiffs disagree, they may refile their request and provide the Court the reasons they believe they are entitled to such information.